# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KERRY X MARSHALL, | : | No. 3:13cv2961 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| TOM CORBETT, ET AL., | : | |
| Defendants | : | |

## **MEMORANDUM**

Before the court for disposition is Chief United States Magistrate Judge Susan E. Schwab's report and recommendation (hereinafter "R&R") in this case involving allegations that the state prison system is infringing on Plaintiff Kerry X Marshall's religious rights. The R&R recommends that the plaintiff's motion for a preliminary injunction be granted in part and that the plaintiff be allowed to purchase and wear a Nation of Islam (hereinafter "NOI") fez while incarcerated. The defendants (hereinafter "government" or "state") has objected to the report and recommendation. The parties have briefed their respective positions, and the matter is ripe for disposition.

## Background

Plaintiff is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"). He is housed at the State Correctional Institution at Rockview. He is an adherent to the Nation of Islam religion.

The plaintiff's second amended complaint asserts that he is required to wear a fez hat pursuant to his religion, NOI. The DOC, however, does not permit members of his religion wear Nation of Islam fezzes. Further, they and are not permitted to conduct Nation of Islam religious services separate from other Muslim services offered at the prison. (Doc. 135, Second Am. Compl. ¶ 14). He brings suit pursuant to the Religious Land Use and Institutionalized Persons Act (hereinafter "RLUIPA") seeking an injunction directing the DOC to allow these religious matters.

**Jurisdiction**

As plaintiff brings suit pursuant to a federal law, the RLUIPA, we have federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Standard of review**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812

F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

The Third Circuit Court of Appeals requires that the movant demonstrate the following: 1) likelihood of success on the merits; and 2) irreparable injury to the plaintiff if relief is not ordered. If the movant establishes these two factors, we balance them with the relative hardship granting or denying the injunction would inflict on the parties and the public interest.
ADP, LLC v. Rafferty, 923 F.3d 113, 119-120 (3d Cir. 2019).

**Discussion**

The plaintiff's second amended complaint asserts that SCI – Rockview inmates who are members of the NOI are not allowed to wear NOI fezzes and are not allowed to conduct their own NOI religious services separate from the other Muslim services offered at the prison. The preliminary injunction motion thus seeks an injunction for the following: 1) ordering the defendant to permit plaintiff to purchase and wear NOI fezzes; 2) allowing a separate Nation of Islam religious service; and 3) ordering observation of NOI holidays. The R&R recommends granting a preliminary injunction with regard to the wearing of an NOI fez. The defendant has objected to this recommendation.[1]

---

[1] The R&R recommends denying the motion for preliminary injunction with regard to the request for separate religious services and the observance of NOI holidays. No objections have been made to these recommendations, therefore,

The R&R analyzes all four of the of the preliminary injunction factors and concludes that they weigh in favor of granting the preliminary injunction with regard to the wearing of the fez. The government objects and alleges that each and every factor in fact weighs in favor of denying the preliminary objection. We will address each factor in turn.

**I. Likelihood of success on the merits**

The first preliminary injunction factor is whether the plaintiff has a reasonable likelihood of success on the merits. ADP, LLC, 923 F.3d at 119.

Plaintiff brings suit under the Religious Land Use and Institutionalized Persons Act (hereinafter "RLUIPA"). This statute provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - -
> **(1)** is in furtherance of a compelling governmental interest;

---

in deciding whether to adopt the report and recommendation as to these issues, we must determine if a review of the record evidences plain error or manifest injustice. FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); see also 28 U.S.C. § 636(b)(1); Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).

After a careful review, we find neither a clear error on the face of the record nor a manifest injustice, and therefore, we shall adopt the report and recommendation and deny the request for a preliminary injunction with regard to separate religious services and observation of NOI holidays.

4

> And
> **(2)** is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

The United States Supreme Court has analyzed the RLUIPA and concluded that it was designed "to provide very broad protection for religious liberty." Holt v Hobbs, 574 U.S. 352, 135 S.Ct. 853, 859 (2015) (quoting Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 693 (2014

In the instant case, the plaintiff challenges the DOC's policy on religious headgear which provides: "Religious headgear must fit flush to the head." (Doc. 193-1, Def. Exh. 1, DC-ADM819(4)(b)). Under this policy, the NOI fez is not permitted because it does not sit flush with the head. (Doc. 164, N.T. of Preliminary Injunction Hearing Oct. 25, 2018, (hereinafter "N.T.") at 59). The DOC asserts that security concerns are at the basis of the regulation. A prisoner could hide a large amount of contraband or weapons in headgear that is not flush with the head. (Id. at 58). Contraband is more difficult to hide in religious headgear that fits flush to the head as any such contraband would be more obvious. (Id. at 80). Examples of religious headgear which sits flush with the head and are allowed under the policy include hijabs, kufis and yarmulkes. (Id. at 57).

Thus, we must determine whether the wearing of the NOI fez is a matter of religious freedom and, if so, whether the restriction of it furthers a government interest in the least restrictive way. We will address these issues separately.

**A. Religious exercise**

First, we must determine whether the government has placed a substantial burden on the exercise of plaintiff's religion. The government argues that it has not because under the RLUIPA "a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007).

Here, according to the government, the prison is not forcing plaintiff to abandon one of his religious beliefs to receive a benefit. Plaintiff can still read the Koran, pray in his call, attend NOI gatherings, observe Ramadan and eat the special religious diet which is available to him. Thus, the government's position is that there is no substantial burden on the exercise of the plaintiff's religion.

The facts of the case, however, indicate otherwise. Plaintiff's amended complaint indicates that his NOI faith mandates that male NOI members wear the NOI's fez prayer cap on a daily basis. (Doc. 135, Am. Compl. ¶ 16). The DOC,

however, bans the purchase and wearing of the NOI's fez, Islamic pray cap, while allowing adherents to other faiths to purchase and wear their faith's religious caps. (Id. ¶ 11). The DOC banned the fez in the year 2000. (Id. at 21).

Plaintiff indicated at the hearing that he cannot pray or read the Koran without his fez. (N.T. at 32). More specifically, the plaintiff indicates that without the fez the following has resulted: "I haven't been able to make prayer. I haven't been able to do my fasting that we are supposed to do. Because of that, I feel as though I'm always on attack. I'm always having evil suggestions and spiritual, like sometimes I walk around and I feel like I got a black cloud over. So everything I'm trying to do, it's like I can't ever get it done." (Id. at 22). It appears that the prison houses eleven (11) followers of the NOI. (Id. at 49).

Evidently, it appears that plaintiff can establish that the ban on fezzes substantially burdens the practice of his religion. If he follows his religious practice and wears the fez, he will be in violation of prison regulations.

**B. Least Restrictive Means of Furthering a Compelling Governmental Interest**

Once a substantial burden on the practice of religion has been established, we must determine if the prison rule is the least restrictive means to further a compelling governmental interest. A prison may not, however, set forth a broadly

7

formulated interest such as prison safety or security to state a compelling governmental interest to justify imposing a burden on the exercises of one's religion. Holt 135 S.Ct. at 863. In fact, "RLUIPA . . . contemplates a more focused inquiry and requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law to the person – the particular claimant whose sincere exercise of religion is being substantially burdened. RLUIPA requires us to scrutinize the asserted harm of granting specific exemptions to particular religious claimants and to look to the marginal interest in enforcing the challenged government action in that particular context." Id. (internal quotation marks and citations omitted).

The compelling interests that the defendant asserts are safety and security concerns. Contraband may be hidden under a fez. In fact, there is more space under a fez than under the other religious headgear which is allowed at the prison. Thus, the fez may conceal contraband such as drugs and weapons. The ban is the least restrictive means to address these safety and security concerns according to the defendant.

Because a compelling interest has been established we move on to determine if the government's restriction is the least restriction possible to further that interest. The plaintiff argues that less restrictive means are available to address these concerns. Specifically, prison staff could stop NOI adherents and

search their fezzes. In fact, it appears that this was the practice in the past. Plaintiff was able to wear a fez during his first ten years of incarceration with the DOC. (Doc. 164, N.T. at 21). In early 2000, the ban was imposed. (Id.) During the time that the fezzes were allowed, DOC staff were able to ask individuals wearing the fezzes to remove them to be searched. (Id. at 21-22). The government argues that such searches would lead to possible violence because they increase the contact between staff and inmates.

After a careful review, we find that the defendant has not imposed the least restrictive means of furthering a compelling governmental interest. As noted by the plaintiff, the fezzes could be searched to ensure that they are not concealing contraband. Defendant points out that several of the cases addressing this issue allow a partial ban on the fezzes and allows them to be worn in the inmate's cell and in the chapel during services but not in the general population areas of the prison. Plaintiff argues that this remedy is not valid. "If plaintiff's religious beliefs require him to wear his [religious headgear] 'at all times,' then a rule that allows plaintiff to wear his [religious headgear] 'most of the time' imposes a substantial burden on his religious exercise because the rule requires him to 'engage in conduct that seriously violates his religious beliefs.'" Ajala v. West, 106 F. Supp. 3d 976, 981 (W.D. Wis. May 4, 2015) (quoting Holt, 135 S.Ct. at 862). We agree that based upon this caselaw, and the facts as they have thus far been

9

presented, allowing the plaintiff to wear his fez only at certain times is not a valid remedy.

Accordingly, we find that the plaintiff has established the wearing a fez is a matter of religious freedom, and the restriction imposed by the DOC is not the least restrictive one that could be used to further the government interest in maintaining safety and security. Thus, the first factor, likelihood of success on the merits weighs in plaintiff's favor.

**II. Irreparable injury**

The second element we must examine in determining whether to grant a preliminary injunction is whether the plaintiff will suffer irreparable injury if the injunction is not granted. ADP, LLC, 923 F.3d at 119. The law provides that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). The "direct penalization, as opposed to incidental inhibition, of First Amendment rights . . . constitutes irreparable injury." Hohe v. Casey, 868 F.2d 69, 73 (3d Cir. 1989).

Here, we are dealing with the RLUIPA which concerns protection of religious rights guaranteed by the First Amendment. Thus, courts have found that like a First Amendment violation, a violation of the RLUIPA creates an irreparable injury. See Opulent Life Church v. City of Holly Springs, Miss., 697

F.3d 279, 295 (5th Cir. 2012). Accordingly, we find that the violation of the RLUIPA creates an irreparable injury and this factor weighs in favor of granting a preliminary injunction.

**III. Greater harm to defendant or plaintiff**

The third factor which we must review to determine if a preliminary injunction should be granted is a balancing of the harm to the defendant if relief is granted versus the harm to the plaintiff if harm is denied. ADP, LLC, 923 F.3d at 120.

Here, the harm to the defendant does not outweigh the harm to the plaintiff. Plaintiff risks having his religious liberties violated. The harm to the defendant is increased costs and potential harm caused by the necessity for more searches. We agree with the R&R that this concern rings hollow. Other religious headgear is already allowed and presumably searched at the prison. Additionally, the Supreme Court has noted that the "RLUIPA 'may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.'" Holt, 135 S.Ct. at 860 (quoting 42 U.S.C. § 2000cc-1(a). A balance of the irreparable harm on the part of the plaintiff and perhaps increased costs on the part of the defendant weighs in favor of the plaintiff.

## IV. Public Interest

The final factor for us to review is whether granting the injunction is in the public interest. ADP, LLC, 923 F.3d at 119. The plaintiff argues that the public interest favors his position because it upholds First Amendment principles of freedom of religion. We agree there exists a great public interest in upholding First Amendment rights such as free exercise of religion. Accordingly, this factor weighs in favor of granting the preliminary injunction.

## Conclusion

Based upon the above, we find that adopting the report and recommendation and granting the preliminary injunction is appropriate. The plaintiff has a reasonable likelihood of success on the merits, he will suffer irreparable harm if it is not granted; the balance of harms weighs in plaintiff's favor and granting the injunction is in the public interest. Thus, we will adopt the report and recommendation. An appropriate order follows.

**Date: <u>Sept. 27, 2019</u>**         **BY THE COURT:**

**<u>s/ James M. Munley</u>**
**JUDGE JAMES M. MUNLEY**
**United States District Court**