UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KERRY X MARSHALL, | ) | CIVIL ACTION NO. 3:13-CV-2961 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| TOM CORBETT, *et al.,* | ) | |
| Defendants | ) | |

MEMORANDUM OPINION

## I.    INTRODUCTION

A man's quest for dignity and meaning in his life can coexist with a penal institution's obligation to provide a safe and orderly prison. But when these competing interest collide, rather than overlap, discontent swells and lawsuits are born. It then falls upon the court to determine where the balance between legitimate penal interests and guaranteed religious freedom rests.

Kerry X Marshall ("Plaintiff") initiated this civil rights action while he was a prisoner in state custody at SCI Rockview. Plaintiff's requests in this case are simple, but numerous. In essence, Plaintiff, an adherent of the Nation of Islam ("NOI"), claims that his rights were violated by DOC employees when they denied his requests for a series of religious accommodations including weekly prayer meetings, special services to observe NOI holy days, weekly NOI study groups, permission to wear an NOI fez, and permission for him and other NOI inmates to organize and conduct several fundraisers each year.

Presently pending before the Court are the parties' cross motions for summary judgment (Docs. 213, 219). Upon consideration of the motions, statements of facts, relevant exhibits, and briefs, Accordingly, I conclude that:

(1)   All requests for injunctive or declaratory relief are DISMISSED as MOOT.

(2)   Plaintiff's RLUIPA and RFPA claims are DISMISSED as MOOT.

(3)   Plaintiff's Motion for Partial Summary Judgment (Doc. 219) is DENIED.

(4)   Defendants' Motion for Summary Judgment (Doc. 213) is GRANTED in part and DENIED in part as follows:

    (a)   Defendants are entitled to qualified immunity as to Plaintiff's First Amendment Free Exercise & Equal Protection Clause claims relating to wearing an NOI Fez and conducting inmate-led fundraisers.

    (b)   Defendants' Motion is DENIED in all other respects.

## II.   BACKGROUND & PROCEDURAL HISTORY

On January 18, 2012, Plaintiff identified as MTOI. (Doc. 215, ¶ 64); (*See also* Doc. 215, ¶ 7) (Plaintiff believes MTOI and NOI are the same). Plaintiff testified at a 2015 deposition that his faith is NOI, and has been NOI since 1987. (Doc. 215, ¶ 4).

After filing a religious accommodation request ("RAR") and grievance, Plaintiff initiated this civil action in federal court. On July 13, 2018, Plaintiff was granted leave to file an Amended Complaint. (Doc. 133). Plaintiff's Amended Complaint (Doc. 135) is the operative complaint in this case.

In his Amended Complaint, Plaintiff names the following fifteen Defendants:

1. Tom Corbett (the Governor of Pennsylvania until January 2015);

2. Pennsylvania Department of Corrections;

3. John K. Murray (Deputy Secretary of the DOC);

4. Andrea Priori-Meintel (Bureau of Treatment Services Director);

5. Ulli Klemm (Religious Volunteer and Recreational Program Administrator);

6. Marcia Noles (Member of the Religious Accommodation Review Committee at the DOC Central Office);

7. Akiva Males (Member of the Religious Accommodation Review Committee at the DOC Central Office);

8. Joseph Ortiz (Member of the Religious Accommodation Review Committee at the DOC Central Office);

9. Lieutenant Dodds (Member of the Religious Accommodation Review Committee at the DOC Central Office);

10. Mariosa Lamas (Superintendent of SCI Rockview);

11. Jeffrey Horton (Member of the Religious Accommodation Review Committee at SCI Rockview);

12. Robert J. Marshall (Member of the Religious Accommodation Review Committee at SCI Rockview);

13. Timothy C. Miller (Member of the Religious Accommodation Review Committee at SCI Rockview);

14. George Snedecker (Member of the Religious Accommodation Review Committee at SCI Rockview); and

15.    Tom Boldin (Member of the Religious Accommodation Review Committee at SCI Rockview).

Plaintiff alleges that these Defendants have denied Plaintiff's requests that NOI inmates have services separate from other Islamic faith groups, and have refused Plaintiff's requests to wear an NOI fez.[1]

Plaintiff asserts claims under 42 U.S.C. § 1983 (First Amendment Free Exercise & Establishment Clauses, and Fourteenth Amendment Equal Protection Clause), the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. § 2000cc *et seq.*) and Pennsylvania's Religious Freedom Protection Act (71 P.S. § 2401).

As relief, Plaintiff requests declaratory relief, injunctive relief, compensatory and punitive damages, and reasonable attorney fees.

On August 7, 2018, Defendants filed an answer. (Doc. 145).

On September 21, 2020, Defendants filed a motion for summary judgment, in which they argue they are entitled to summary judgment as to all of Plaintiff's federal claims. (Doc. 213). Along with their motion, Defendants filed a brief in support (Doc. 214), statement of facts (Doc. 215), and exhibits (Docs. 216, 217, 218). On December 8, 1010, Plaintiff filed a brief in opposition (Doc. 228) and

---

[1] Plaintiff was granted a preliminary injunction, under which he has been permitted to purchase and wear an NOI fez during the pendency of this action. (Docs. 186, 194, 195).

response to Defendants' statement of facts (Doc. 229). On January 12, 2021, Defendants filed a reply (Doc. 236), a supplemental statement of facts (Doc. 237), and supplemental exhibits (Doc. 238). On January 25, 2021, Plaintiff filed a reply to Defendants' supplemental statement of facts (Doc. 240) and a supplemental exhibit (Doc. 241). On February 18, 2021, Defendants filed a second supplement (Doc. 247) and exhibits (Doc. 246). On March 11, 2021, Plaintiff filed a response. (Doc. 249).

On September 21, 2020, Plaintiff filed a cross motion for summary judgment (Doc. 219). Along with his motion, Plaintiff filed a brief in support (Doc. 220), statement of facts (Doc. 221), and exhibits (Doc. 222). In his motion, Plaintiff requests partial summary judgment. Specifically, he argues that he is entitled to summary judgment as to the claims asserted under RLUIPA, the First Amendment, and the Fourteenth Amendment "relating to the DOC's refusal to allow him to wear a fez, and to participate in congregate religious holidays, including separate and meaningful religious services for members of the Nation of Islam." (Doc. 220, p. 8). On November 19, 2020, Defendants filed an answer to Plaintiff's statement of facts. (Doc. 225). On December 9, 2020, Defendants filed a brief in opposition. (Doc. 226). On January 13, 2021, Plaintiff filed a reply. (Doc. 239).

These pending cross-motions for summary judgment have been fully briefed.

III.     LEGAL STANDARDS

Before reaching the merits of these cross-motions, it is helpful to review the

legal standards that apply.

     A.     LEGAL STANDARD FOR RESOLVING CROSS MOTIONS FOR SUMMARY
          JUDGMENT

We will examine the motion for summary judgment under a well-established

standard. Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

> A party may move for summary judgment, identifying each claim or
> defense - or the part of each claim or defense - on which summary
> judgment is sought. The court shall grant summary judgment if the
> movant shows that there is no genuine dispute as to any material fact
> and the movant is entitled to judgment as a matter of law. The court
> should state on the record the reasons for granting or denying the
> motion.

Fed. R. Civ. P. 56(a). For purposes of Rule 56, a fact is material if proof of its

existence or nonexistence might affect the outcome of the suit under the applicable

substantive law. *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408,

412 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). For an issue to be genuine, "all that is required is that sufficient evidence

supporting the claimed factual dispute be shown to require a jury or judge to

resolve the parties' differing versions of the truth at trial." *Id.* (quoting *Anderson,*

477 U.S. at 248-49).

In adjudicating a summary judgment motion, the court must view the

evidence presented in the light most favorable to the opposing party, *Anderson,*

477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). When the non-moving party's evidence contradicts that advanced by the movant, then the non-movant's must be taken as true. *Big Apple BMW*, 974 F.2d at 1363.

Accordingly, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The parties must rely on admissible evidence when meeting their burdens for summary judgment, but their evidence only needs to be admissible in content and not in form. *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014).

Provided the moving party has satisfied its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, that show a genuine issue for trial, and it may not rely upon the allegations or denials of its pleadings. *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); *see also* Fed. R. Civ. P. 56(c). A non-moving party's failure to show a genuine issue of material fact for even one essential element of a

claim after the moving party has met its burden renders all other facts immaterial, and it is enough to permit summary judgment for the moving party. *See Celotex*, 477 U.S. at 323. Further, once a moving party's burden has been met, a non-moving party's attack on settled legal precedent is also insufficient unless there is a significant justification for the opposition to precedent. *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1126, 1134 (2019).

Also, once the moving party has satisfied the burden of proving there is no genuine issue of material fact, the non-moving party may not survive summary judgment by simply alleging that the moving party's discovery materials are incomplete or inconsistent. *See Williams v. Office of DA*, 751 Fed. Appx. 196, 199 (3d Cir. 2018) (citing *Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005)). The non-moving party may request that the court compel discovery to address inconsistent and incomplete discovery that may lead to evidence proving a genuine issue of material fact, but inconsistency and incompleteness of discovery is not inherently sufficient to prove the existence of a genuine issue of material fact. *See id.*

If the non-moving party asks to acquire contradictory evidence in the moving party's possession that is relevant to establishing a genuine issue of material fact, the court abuses its discretion if it does not properly consider the non-moving party's requests. *In re Avandia Mktg., Sales & Prods. Liab. Litig.*, 945

F.3d 749, 761 (3d Cir. 2019) (citing *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) (quoting *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 309-10 (3d Cir. 2011))).

Once the evidence is gathered, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations. *See Anderson*, 477 U.S. at 252. It instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id.*; *see also Big Apple BMW*, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the factfinder to ascertain the believability and weight of the evidence.

*Big Apple BMW*, 974 F.2d at 1363. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *NAACP v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).

"The standard for addressing cross-motions for summary judgment remains the same as if there were only one motion filed." *Beneficial Mut. Sav. Bank v.*

*Stewart Title Guar. Co.*, 36 F. Supp.3d 537, 544 (E.D. Pa. 2014) (citing *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008)). "When confronted with cross-motions for summary judgment the 'court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Beneficial Mut. Sac. Bank*, 36 F. Supp.3d at 544 (quoting *Schlegel v. Life Ins. Co. of N. Am.*, F.Supp.2d 612, 615 n.1 (E.D. Pa. 2003)).

    B.    Legal Standard for Claims Brought Under 42 U.S.C. § 1983

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)). To establish a claim under § 1983, Plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

C.     LEGAL STANDARD FOR FIRST AMENDMENT FREE EXERCISE CLAIMS

The First Amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I. By incorporation through the Fourteenth Amendment, the Free Exercise Clause of the First Amendment applies to the states. *Cantwell v. State of Connecticut*, 310 U.S. 296, 303 (1940). "Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (citation omitted). But an inmate's First Amendment rights are necessarily limited by legitimate penological objectives. *Sharp v. Johnson,* 669 F.3d 144, 155 (3d Cir. 2012).

The legal standards governing inmate First Amendment free exercise claims like those brought here are familiar ones and begin with the truism that "convicted persons do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). With respect to the First Amendment, an inmate retains those rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987). Thus, while prisoners retain the First Amendment right to a reasonable opportunity to exercise their

religious beliefs, those opportunities do not extend to every conceivable religion-related demand that could be made by a prisoner. *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000). Only beliefs which are both sincerely held and religious in nature are entitled to constitutional protection, and "the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." *DeHart*, 227 F.3d at 50-51.

Therefore, a prison regulation which is alleged to impinge upon an inmate's First Amendment rights "is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Accordingly, in order to establish a free exercise violation Plaintiff must show that Defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penological interests. *Id.* In making this determination, courts consider the following four factors: (1) "whether the regulation bears a 'valid rational connection' to a legitimate and neutral government objective;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) whether alternatives exist to fully accommodate the right at *de minimis* cost. *Id.* at 89-90.

The institution bears the burden of meeting the first factor. Pursuant to the first factor "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-90 (internal citation omitted). "This standard is similar to rational-basis review, under which a statutory classification can be declared unconstitutional only where the relationship of the classification to its asserted goal is 'so attenuated as to render the distinction arbitrary or irrational.'" *Waterman v.* Farmer, 183 F.3d 208, 215 (3d Cir. 1999) (quoting *Nordlinger v.* Hahn, 505 U.S. 1, 11 (1992)). Courts generally "accord great deference to the judgment of prison officials, who are charged with the 'formidable task' of running a prison." *Marshall*, 2015 WL 1224708 at *12.

With respect to the second factor, "[w]hen other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owned to corrections officials in gauging the validity of the regulation." *Turner*, 482 U.S. at 90.

With respect to the third factor, *Turner* cautions that "[i]n the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources

for preserving institutional order." *Id.* "When accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id.*

With respect to the fourth factor, *Turner* instructs that "the absence of ready alternatives is evidence of the reasonableness of a prison regulation. *Id.* (citing *Block v. Rutherford*, 468 U.S. 576, 587 (1984)). "By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.*

D.   LEGAL STANDARD FOR PRISONER EQUAL PROTECTION CLAIMS ABOUT TREATMENT OF DIFFERENT RELIGIOUS GROUPS

Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When an inmate asserts an equal protection claim based on the allegedly disparate treatment of different religious groups, the appropriate analysis is the "same as that for . . . [a] Free Exercise claim." *DeHart v. Horn*, 227 F.3d 47, 61 (3d Cir. 2000).

E.   LEGAL STANDARD FOR FIRST AMENDMENT ESTABLISHMENT CLAUSE CLAIMS

The Establishment Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law respecting an

establishment of religion." U.S. Const. amend. I. As explained in *Marshall v. Pennsylvania Dept. of Corrections*:

> The Supreme Court has set forth three tests for determining whether governmental action violates the Establishment clause: [(1)] the coercion test, [(2)] the *Lemon* test, and [(3)] the endorsement test. *Mondrovich v. Allegheny Cnty*, 385 F.3d 397, 400-01 (3d Cir. 2004). The first of these, the "coercion" test, . . . focuses primarily on government action in public education. *See Freiler v. Tangipahoa Parish Bd. of Educ.*, 185 F.3d 337, 343 (5th Cir. 1999) *cert denied*, 530 U.S. 1251. The second test, named after the Supreme Court case *Lemon v. Kurtzman*, 403 U.S. 602 (1971), is a three prong approach that finds a challenged action is unconstitutional if (1) it lacks a secular purpose, (2) its primary effect either advances or inhibits religion, or (3) it fosters an excessive entanglement of government with religion. *Lemon*, 403 U.S. at 612-13. Finally, the "endorsement" test modifies *Lemon* in cases involving religious displays on government property . . . .

No. 3:12-CV-0351, 2015 WL 1224708 at *13 (M.D. Pa. Mar. 17, 2015).

## IV.   ANALYSIS

### A.   PLAINTIFF'S RLUIPA CLAIMS, RFPA CLAIMS & REQUESTS FOR INJUNCTIVE RELIEF

As a preliminary matter, I must determine whether some of Plaintiff's claims are moot. The parties do not dispute that Plaintiff is no longer in the custody of the Pennsylvania Department of Corrections.

Defendants have filed several suggestions of mootness in this case. (Docs. 46, 248, 250).

There is no dispute that, Plaintiff has been released from DOC custody. An inmate's transfer from the facility complained of generally moots the equitable and

declaratory claims. *Abdul–Akbar v. Watson,* 4 F.3d 195, 197 (3d Cir. 1993) (former inmate's claim that the prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial).

The parties agree that Plaintiff's requests for declaratory and injunctive relief should be dismissed as moot. (Docs. 248, 252).

Furthermore, Plaintiff's RLUIPA and Pennsylvania Religious Freedom Protection Act ("RFPA") claims are dismissed in their entirety as MOOT. *See e.g., Tootle v. Long*, 1:20-CV-235, No. 2021 WL 3610034 at *4 (W.D. Pa. July 19, 2021) (explaining that an inmate can obtain only injunctive or declaratory relief under RLUIPA); 71 P.S. § 2405(f) (explaining that relief is limited to declaratory and injunctive relief under the RFPA).

B.   PLAINTIFF'S FIRST AMENDMENT FREE EXERCISE CLAIMS & FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIMS

Plaintiff's First Amendment Free Exercise claim is set forth under Count II of his Amended Complaint. Plaintiff alleges:

63.   Defendants prevented Kerry X from observing his faith's mandated congregational NOI holidays and NOI Fez at SCIR and throughout the PDOC prison system on the basis of its PDOC-RC and PDOC-RP.

64.   Defendants' denial of accommodation of mandated congregational NOI Holidays and NOI Fez at SCIR substantially burdens Kerry X's free exercise of NOI, and is ongoing.

65.     Defendants did not consider whether any alternative methods exist that fully accommodate Kerry X's mandated congregational NOI Holidays and mandated wearing of NOI Fez cap at a de minimis cost to further its penological goals.

66.     Defendants did not consider whether not accommodating mandated congregational NOI Holidays and mandated wearing of NOI Fez cap is the Least Restrictive means of furthering a compelling interest.

67.     Defendants preventing Kerry X from observing congregational NOI Holidays and NOI Fez cap is not reasonably related to a legitimate penological concern.

(Doc. 135, ¶¶ 62-67).[2] The term "congregational holidays" is understood as referring to: Jumu'ah (Friday services), Zakat (Charity Bake Sale), Ramadan, 2 Eid Feasts, Savior's Day, Day of Atonement, and a weekly study group. (Doc. 135, ¶ 15).

Plaintiff's equal protection claims are set forth in Count IV of his Amended Complaint as follows:

77.     Defendants used their PDOC-RC to ban mandated congregational NOI holidays while allowing congregational holidays by the similarly situated Catholic, Protestant, Jehovah's Witness, Salafi, Jewish, and Native American faiths at SCIR.

---

[2] In his Amended Complaint, Plaintiff refers to the PDOC-RP and PDOC-RC in paragraph 63. In a different section of the Amended Complaint, Plaintiff defines PDOC-RP as the Department of Corrections Religious Policy, DC-ADM 819. (Doc. 135, ¶ 1). In the same paragraph of his Amended Complaint, Plaintiff references Pennsylvania Department of Corrections Religious Custom. I infer that the abbreviation "PDOC-RC" refers to the Department of Corrections "religious customs." *Id.*

78.   Defendants used their PDOC-RC to deny accommodation of "separate" NOI Holidays from the Salafi faith despite the NOI and Salafi being two (2) significantly different Islamic faiths while allowing accommodation of "separate" Christian holidays by the three (3) significantly different and similarly situated Christian faiths of Protestant, Catholic, and Jehovah's Witness at SCIR.

79.   Defendants used their PDOC-RP to ban the purchasing and wearing of the NOI Fez cap while allowing the similarly situated Jewish, Salafi, Rastafarian, and Native American faiths' religious headgear to be purchased and worn  at SCIR and throughout the PDOC prison system.

80.   Defendants implemented and enforced a PDOC-RC and PDOC-RP that discriminate against Kerry X and the NOI faith because the Defendants' hatred of the NOI faith, NOI beliefs, and NOI Leader.

81.   Defendants' unequal treatment and discriminatory acts against the NOI at SCIR substantially burdens Kerry X's free exercise of NOI, and is ongoing.

82.   Defendants' unequal treatment and discriminatory acts against the NOI at SCIR is not reasonably related to a legitimate penological concern.

(Doc. 135, ¶¶ 77-82).

For the purposes of the pending motion for summary judgment no party appears to dispute that Plaintiff's beliefs are sincerely held.

1.   Both Motions For Summary Judgment Are Denied as to the Free Exercise & Equal Protection Claims About Separate Services for NOI Inmates

I construe Plaintiff's Amended Complaint as requesting that the following "services" be conducted separately from the "broad" Islamic services:

(1)     Weekly Friday Prayer;

(2)     Separate Ramadan;

(3)     Separate Eids Al-Fitir and Al-A'Da (with NOI-compliant meals)

(4)     Savior's Day

(5)     Day of Atonement

(6)     Weekly Study Group

Both Plaintiff and Defendants argue that they are entitled to summary judgment as to the Frist Amendment Free Exercise Claims and Fourteenth Amendment Equal Protection Claims related to providing separate services to NOI inmates because the *Turner* factors weigh in their favor. In their briefing, however, both Plaintiff and Defendants do not address each of these requests individually, and instead focus on the weekly prayer service, Savior's Day service, and Day of Atonement service. In addition, Defendants seem to misunderstand Plaintiff's request for Friday prayer services does not include a request that an NOI Chaplain be provided for those services. Plaintiff is simply requesting a Friday gathering where NOI inmates are allowed to pray, which can be supervised by department staff as appropriate.

Each of Plaintiff's requests for services are unique, may have been denied for different reasons, may have different alternatives available, and may have a different impact on the institution. Therefore, each request requires a separate

analysis under the *Turner* factors to resolve. Accordingly, the parties' cross-motions for summary judgment will be denied without prejudice as to these claims due to the lack of proper development in the motions and briefs.[3]

<blockquote>
2.    Defendants Are Entitled to Qualified Immunity As to Plaintiff's First Amendment Free Exercise and Fourteenth Amendment Equal Protection Claims About the Denial of His Request to Wear an NOI Fez
</blockquote>

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). A qualified immunity analysis involves two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Lower courts have the discretion to decide which question to analyze first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

---

[3] Local Rule 56.1 provides that "[a] motion for summary judgment filed pursuant to Fed. R. Civ. P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." The Court finds it helpful when these concise "paragraphs" contain only <u>one fact</u> per paragraph. In most cases each numbered "paragraph" in a statement of facts should be only one sentence long, followed by a citation to whatever filed exhibits support the fact. It is also helpful to the Court when the parties refer back to their statement of facts in their briefs to reference specific undisputed facts that entitle them to judgment on a particular claim.

> a. Whether Defendants Violated Plaintiff's Right To Free Exercise & Equal Protection When They Denied His Request to Wear a Four Inch NOI Fez at SCI Rockview

Defendants argue that Plaintiff's rights were not violated by the denial of his request to wear an NOI fez. Plaintiff argues that Defendants did violate his rights when they denied his request. For the purposes of the pending cross-motions for summary judgment, no party disputes that Plaintiff's beliefs are sincerely held. Therefore, the court must determine whether Defendants' conduct was unlawful by evaluating the *Turner* factors.

Defendants bear the burden of proving the first *Turner* factor. In their brief, Defendants argue:

> The ban on NOI headgear also does not violate the First Amendment. There are legitimate security concerns for not allowing headgear which does not fit flush to the inmate's head. The Courts have recognized security as a legitimate penological interest. *Turner*, 482 U.S. at 91; *O'Lane*, 482 U.S. at 348; *Smith*, 295 Fed. Appx. at 482. In this case, the ban discourages the concealment of contraband, such as drugs and weapons. The Court have upheld limitations on the type of headgear worn by inmates. *See Marshall*, 2015 WL 1224708 at *10 (MTOI inmates prohibited from purchasing and wearing Islamic fez); *Scott*, 2015 WL 1405445 at *4 (religious headgear limited to white or brown kufis, because other colors could be affiliated with gangs); *Morris-El*, 2006 WL 1455592 at *5 (red fez objectionable on its face, because it is easily capable of concealing contraband).

(Doc. 214, pp. 21-22). In their statement of facts, Defendants wrote:

> 61. Under Department Policy DC-ADM 819, inmates are not permitted to wear religious headgear if it does not fit flush to the head. This is for security reasons because contraband can be hidden under the headgear. Contraband includes such items as

weapons and drugs. Accordingly, the Department bans the Rastafarian Tam and the turban for Sikh inmates. To the extent that the headgear known as the NOI crown fez does not fit flush to the head, it is also banned under the Policy. On the other hand, the Department permits other religious headgear to be worn by inmates, such as kufis and yarmulkes, because they fit flush to the head and so do not pose a security risk. (It is not clear exactly which religious headgear is favored by the NOI faith, whether a traditional kufi or a fez, and if it is a fez, the dimensions of such a head covering.) *Id.* at para. 14.

(Doc. 215, ¶ 61). In response, Plaintiff wrote:

61.   Denied that there is a legitimate security reason for distinguishing between religious headgear that fits flush to the head and headgear that does not as contraband is frequently concealed under the religious headgear currently allowed by the DOC. [Doc. 221 ¶¶ 31, 36, 37]. Denied that "it is not clear what actually constitutes a fez." Plaintiff described the fez during his preliminary injunction testimony, provided Defendants with a photograph of a similar fez when he requested his religious accommodation and submitted an outside purchase order form specifically identifying the Fez he wished to acquire. Plaintiff's Exhibit A at 20:9-23 [Doc. 222-1, p. 21]; Defendants' Exhibit 3, ECF NO. 217 at 38; Plaintiff's Exhibit M, Outside Purchase Approval Form [Doc. 229-1].

(Doc. 229, ¶ 61).[4] I am not, however, persuaded that a material dispute exists here.

Plaintiff does not dispute that larger, and potentially more dangerous, contraband can be hidden under a hat that does not fit flush to the head. There is a legitimate security interest in preventing more, larger, or more dangerous contraband from

---

[4] The style of Kufi-Fez requested by Plaintiff in his outside purchase order appears to be 4 inches tall. (Doc. 229-1); *see also* muslimclothing.com (last visited Mar. 17, 2022). The pictures of the NOI fez submitted by Plaintiff with his RAR also appear to be dark colored with embroidery and sit several inches off the wearer's head. (Doc. 217, p. 38).

entering or being disseminated throughout the prison. Accordingly I find that Defendants have met their burden under the first factor.

Turning to the second *Turner* factor, Plaintiff argues that he has no alternative means of practicing his faith without wearing a fez. In support of this position, Plaintiff asserts in his statement of facts that:

> 5.   The messenger of the Nation of Islam, the Most Honorable Elijah Muhammad, requires the members of the Nation of Islam to wear the fez as a symbol harkening back to their story of creation. Exhibit A at 19:24-20:5.
>
> 6.   The fez is also a talisman that protects members of the Nation of Islam from evil spirits when they are walking in life and when in prayer. *Id.* at 20:5-8.
>
> 7.   The Nation of Islam fez is much smaller than the Shriners fez. *Id.* at 20:15023; 58:18-23.
>
> 8.   Without a fez, Kerry X is unable to make prayer, read his Quran or fast without violating his religious beliefs. *Id.* at 22:3-27, 32:9-20.
>
> 9.   Due to the lack of protection of the fez, he feels that there is a black cloud over him. *Id.* at 22-15-17.

(Doc. 221, ¶¶ 5-9). In their response, Defendants deny the facts set forth in paragraphs 5, 6, 7, and 8 because Plaintiff did not identify what he considers to be an NOI Fez. (Doc. 225, ¶¶ 5-8). However, as noted by Plaintiff he submitted images of an NOI fez as early as 2012 with his RAR. Defendant submitted copies of those images in support of their motion for summary judgment. (Doc. 217, p. 38). In their briefs, Defendants argue that "nothing is physically stopping

[Plaintiff] from praying in his cell and reading the Koran without a fez." (Doc. 226, pp. 14-14). They also argue, without citing to the record, that Plaintiff admitted to reading NOI texts at SCI Rockview. *Id.* They "question" that wearing a fez is an "arbitrary preference of the Plaintiff." *Id.* However, at the summary judgment stage, such claims must be supported by evidence. The record in this case shows that Plaintiff communicated what an NOI Fez is. Furthermore, Defendants have cited no evidence to contradict Plaintiff's sworn testimony that he cannot pray, read religious texts, or fast without a fez. *See Albrechtson v. Board of Regents of Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 ("Judges are not like pigs hunting for truffles buried in the record."). Accordingly, I find that the second *Turner* factor weighs in Plaintiff's favor.

Turning to the third *Turner* factor, Plaintiff argues that the cost of accommodating his request to wear an NOI fez is "virtually non-existent." (Doc. 220, p. 38). He suggests that the DOC need only "apply the same practice to searching Kerry X's fez as it does to every other state issued or religious head covering." *Id.* Defendants argue that permitting inmates to wear a fez would have a significant adverse impact on prison staff because:

> it would increase the necessity of staff to inspect the inside of the fez, whenever it is worn by a NOI inmate. This would take away from the inspection of other inmates and areas of the prison.

(Doc. 214, pp. 21-22). The following facts are undisputed:

39.   Incarcerated people are subjected to pat searches on a daily basis. *Id.* at 49:21-23.

40.   Pat searches are a normal part of a correction officer's job responsibilities. *Id.* at 51:20-52:4.

41.   Pat searches take less than 30 seconds. *Id.* at 51:17-19.

42.   During pat searches, all hats are removed and searched. *Id.* at 49:17-19.

43.   Religious headgear is also subject to search. Exhibit C at 20:19-24.

44.   Searching an incarcerated person's hat does not increase the length or difficulty of a pat search. Exhibit F at 52:5-14.

(Doc. 221, ¶¶ 39-44); (Doc. 225, ¶¶ 39-44) (admitting these facts). Furthermore, Plaintiff asserts, and Defendants do not cite any evidence to contradict, that Plaintiff was permitted to wear an NOI fez at SCI Graterford for over ten years. (Doc. 221, ¶ 45); (Doc. 225, ¶ 45). Based on these undisputed facts, I find that the third *Turner* factor weighs in Plaintiff's favor. There appears to be very little operational impact of allowing NOI inmates to wear a fez.

Turning to the fourth *Turner* factor, I find that there are reasonable alternatives to the denial of Plaintiff's request to wear a 4 inch NOI fez or a fez like the ones pictured in the images he submitted with his RAR. In supplemental statement of facts, Defendants reported:

97.   As of January 27, 2021, the Department's Religious Articles Catalog has been revised to include a new religious headgear, which is called "White Turban Plain Flat Top Thin Fabric Kufi." It is white in color and has no markings or symbols on it.

The Department's religious policy does not permit religious headgear to be other than white in color, for security reasons. They should have no symbols or markings, because they may constitute gang affiliations. *Id.* at ¶ 4.

98.  In addition, the new religious headgear is made of thin one-ply material and so is less likely to conceal contraband, such as drugs or weapons. The new religious headgear is less than three inches high, which also makes the concealment of contraband less likely. *Id.* at ¶ 5.

. . . .

100.  The addition of the new religious headgear is intended to accommodate the needs of certain non-orthodox Muslim faiths, including the Nation of Islam and Mohammad's Temple of Islam. *Id.* at ¶ 7.

(Doc. 247, ¶¶ 97, 98, 100); *see also* (Doc. 246, p. 8) (image of white turban plain flat top thin fabric kufi). Thus, the fourth *Turner* factor weighs in Plaintiff's favor.

Plaintiff alleges that the NOI inmates were treated differently from the Salafi, Jewish and Rastafarian inmates in the facility because these groups are permitted to wear facility-approved religious head coverings, but Plaintiff was not permitted to wear an NOI Fez. My analysis of the *Turner* factors is the same for the equal protection and free exercise claims.

Based on my review of the *Turner* factors for the purposes of analyzing whether Defendants are shielded from Plaintiff's request for monetary damages by qualified immunity, I find that Plaintiff's constitutional rights were violated. However, qualified immunity may still shield Defendants from Plaintiff's money

damages claims if the constitutional right at use was not clearly established at the time it was violated.

        b.      Whether Plaintiff's Rights Of Free Exercise & Equal Protection Were Clearly Established At The Time of the Denial

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.' " *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court has stated that this standard does not require a case directly on point but requires that "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Taylor v. Barkes*, 575 U.S. 822 (2015).

The dispositive question that the court must ask is "whether the violative nature of particular conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*; *see also Davenport v. Borough of Homestead*, 870 F.3d 273, 281 (3d Cir. 2017). This "clearly established" standard ensures that an official can reasonably anticipate

when his or her conduct may give rise to liability, and "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties." *Reichle*, 566 U.S. at 664.

Defendants argue that they are entitled to qualified immunity because "[t]he case law on the wearing of the NOI fez is scarce." (Doc. 214, p. 15).

In response, Plaintiff argues that "Defendants are not entitled to qualified immunity where they fail to demonstrate a rational connection between their challenged regulation and the governmental interest put forward to justify it." (Doc. 228, p. 46). As discussed above, however, I found that Defendants have demonstrated a rational connection between their regulation that headgear must fit flush to the head, and their interest in minimizing the amount and type of contraband that is circulated in the prison. Furthermore, the evidence that tipped the balance in this case, under *Turner* factors two, three, and four, is fact specific to this case and to the specific type, dimensions, and fabric of the Fez that was requested, and to the significant impact its absence has on Plaintiff's ability to practice his religion considering available alternatives. Accordingly, I find that the right denied was not clearly established at the time it was denied. Therefore, Defendants are entitled to qualified immunity as to both Plaintiff's First Amendment Free Exercise Claim and the Fourteenth Amendment Free Exercise Claim.

3.     Defendants Are Entitled to Qualified Immunity As to Plaintiff's
Free Exercise Claim About Fund Raisers

In their statement of facts, Defendants assert:

45.    Department policy prohibits the establishment of inmate
organizations, whose membership is discriminatory in nature,
such as based on religion or gender or political affiliation.
Generally, only one inmate organization per institution is
allowed, unless the inmate organizations have been
grandfathered in, such as the JC's or the Lifer's Association.
With respect to inmate fundraisers, Department policy also
limits the type of fundraisers in which inmate organizations
may participate at each institution. There is also a prohibition
on fundraisers by inmate religious groups. *Id.* at para. 27.

46.    Inmates are free as individuals to donate to a charitable
organization or cause of their choosing. Further, they can also
choose to join inmate organizations within the institutions and,
thus, seek to influence what causes those inmate organizations
donate to. *Id.* at para. 28.

. . . .

71.    Under Department Policy, generally only one inmate
organization is permitted in each institution, unless the
organization is grandfathered in. Currently there are a total of
three inmate organizations at SCI-Rockview: the Lifers'
Association, the New Breeds or JC's and the Gavel Club. These
groups are not religious in nature, because membership in such
groups cannot be discriminatory in nature. *Id.* at para. 24.

72.    Further, only approved inmate organizations are to conduct
fundraisers at the institution. An individual inmate can donate
privately to any outside cause or charity of his or her choosing.
or he or she can join an inmate secular organization and try to
influence which causes or charities should receive the proceeds
of those fundraisers. *Id.* at para. 25.

. . . .

84. Fundraisers should benefit all the inmates, not just one group. So that one group doesn't get powerful. *Id.* at p. 92.

(Doc. 215, ¶¶ 45, 46, 71, 72, 84).

In his responsive statement of facts, Plaintiff asserts:

45. Admitted in part, denied that in practice fundraisers must be managed by an inmate organization and are not religious in nature. Chapel staff and incarcerated people at SCI Rockview conducted an All Faiths fundraiser on at least two occasions which raised money to be donated to charity. *See* Plaintiff's Exhibit B, 65:9-68:2; 70:15-19. These fundraisers did not create any serious issues for the facility or the DOC as evidence by the fact that the central office did not learn that they even occurred until this litigation. *See* Plaintiff's Exhibit I, 91:14-23.

46. Admitted.

. . . .

71. Admitted that this accurately reflects Defendant Boldin's declaration.

72. Admitted.

. . . .

84. Admitted that this accurately reflects Lt. Butts' deposition testimony.

(Doc. 215, ¶¶ 45, 46, 71, 72, 84).

Defendants argue that they are entitled to summary judgment as to Plaintiff's free exercise claim about NOI fund raisers. They argue:

There are also legitimate penological reasons for the ban on religious groups conducting fundraisers. By limiting the number and type of groups that can conduct fundraisers, the prison officials ensure regularity and consistency in the type of fundraisers. Further, the

> prohibition disallows discrimination on the basis of religion. NOI inmates can still give to a charity of their individual choosing or they can join a secular group and seek to influence what charities they conduct.

(Doc. 214, p. 22).

> In response, Plaintiff argues:

> There is a dispute of material fact as to the legitimacy of Defendants' interests in denying Kerry X's requests for communal fundraisers to meet his religious obligation of Zakat. Defendants maintain that the limitations on fundraisers promote the DOC's interests in regularity, consistency and prevent discrimination. Def's Brief at 15. Despite this, there is a history of religious fundraisers at SCI-Rockview which were not sponsored by an inmate organization. *See* Plaintiff's Response to Defendants' Statement of Material Facts, ¶45. Further, these fundraisers created so few issues for the DOC that those in the central office only learned of them through this litigation. *Id.* Under these circumstances, Defendants are not entitled to summary judgment. *See Hodges*, 2015 U.S. Dist. LEXIS 22199, at *21-22 ("The record (viewed most favorably to Hodges) shows that defendants are not applying the outside-volunteer policy uniformly and consistently. Thus, a trial is necessary.").

(Doc. 228, pp. 40-41).

Plaintiff argues that there is a material dispute of fact related to the enforcement of the DOC's policy prohibiting inmate-led religious groups from conducting fund raisers. Plaintiff argues that a chaplain-organized all-faith fundraiser violated this policy. The chaplains organized this fundraiser, the chaplains chose the charity, and the only role of the inmate-volunteers was to hand out donuts. (Doc. 222-2, pp. 68-71). The chaplain led and organized fund raiser is

different than an inmate-led fundraiser. Accordingly, I am not persuaded that this fundraiser creates a material dispute as to the application of this policy.

Once again, the institution bears the burden of meeting the first *Turner* factor. I find that, as a matter of common sense, there is a valid and reasonable relationship between the regulation that restricts inmate-organized fundraising to approved inmate organizations with non-discriminatory membership criteria and the prison's interest in maintaining order in the facility. *See e.g. Cole v. Danberg*, No. 10-088, 2015 WL 5437083 at *6 (D. Del. Sept. 14, 2015) (finding that there is a rational connection between a regulation prohibiting fundraising by inmates and the legitimate interest of preventing fraud and theft).

With respect to the second *Turner* factor, Plaintiff is provided with an alternate means of charity by making individual donations, or by joining an inmate organization and participating in their fundraising events. With respect to the third *Turner* factor, the prison does not allow inmate-organized fundraisers by any religious group. Therefore, the impact of this regulation is the same for all inmates. With respect to the fourth *Turner* factor, Plaintiff is permitted to use his own funds to donate to charity. After considering these factors, I find that the prison regulation that prevents Plaintiff and other member of his faith from organizing fundraisers is valid. Furthermore, Defendants are entitled to qualified immunity because no violation of Plaintiff's constitutional rights occurred.

Accordingly, Defendants' will be granted summary judgment as to this claim.

C.    PLAINTIFF'S ESTABLISHMENT CLAUSE CLAIMS

Plaintiff's establishment clause claims are set forth in Count III of his Amended Complaint as follows:

69.    Defendants use their PDOC-RC and PDOC-RP to establish the Salafi faith over the NOI at SCIR.

70.    Defendants endorse and favors the Salafi Faith over the NOI at SCIR.

71.    Defendants favors the Salafi's holidays over the NOI Holidays at SCIR.

72.    Defendants favors the Salafi Kufi cap over the NOI Fez within the PDOC system.

73.    Defendants forces Kerry X and NOI inmates into a Hobson's choice to either observe the Salafi faith, Salafi's holidays, and Salafi's kufi prayer cap and forgo observing the NOI faith, NOI Holidays, and NOI Fez cap or not observe any Religion, Religious holidays, and Religious caps at all.

74.    Defendants directly and indirectly coerces Kerry X and NOI inmates to convert to, observe, and support the Salafi faith, holidays, and kufi prayer cap at SCIR, contrary to, and in violation of, his sincerely held NOI beliefs.

75.    Defendants establishment of Salafi over NOI substantially burdens Kerry X's free exercise of NOI.

(Doc. 135, ¶¶ 69-75).

As discussed in Section III (E) of this Opinion, Plaintiff's Establishment Clause claims should be evaluated under the *Lemon* test. Under this test, a

challenged action is unconstitutional if: (1) it lacks a secular purpose; (2) its primary effect either advances or inhibits religion; or (3) it fosters an excessive entanglement of government with religion. *Marshall*, 2015 WL 1224708 at *13.

Defendants argue that they are entitled to summary judgment as to this claim. I have reproduced their argument below in its entirety:

> The Defendants are also entitled to summary judgment on the Plaintiff's claim under the Establishment Clause (Count III). They do not favor or promote one religious group over another at SCI-Rockview. By providing a generic Muslim Ju'amah service on Fridays as well as accommodating Muslim holy days, the Defendant is seeking to accommodate all the diverse Muslim faiths, including Sunni, Shite, and NOI. NOI inmates are not forced to attend to broad Muslim services and holy days.

> In *Marshall*, in granting summary judgment to the prison officials on the Plaintiff's Establishment Clause claim, Judge Mannion wrote in part:

>> "As previously discussed, DC-ADM 819 does not inhibit or interfere with any of Plaintiff's required religious practices, but merely places a restriction on providing separate MTOI services, as well as other secular services, due to budget and security considerations. However, such secular services restriction is not made without reasonable accommodation of providing worships services for major faith group, such as Catholics, Jehovah's Witnesses, Jewish, Muslim, Native American, and Protestants, without impermissibly promoting any specific religion. Thus the denial of separate services clearly falls short of fostering or endorsing one religious practice over another.

> 2015 WL 1224708 at *13 (M.D. Pa. Mar. 17, 2015).

> Similarly, in this case, the Defendants do not impermissibly promote any specific religious faith. They merely deny separate NOI services

and feast days due to staff and space restraints. Nor does the record show that the Plaintiff is compelled or forced to convert to or practice the Sunni Muslim faith over his NOI faith. He may or may not attend the broad Islamic services, as he wishes.

(Doc. 214, pp. 30-31).

Plaintiff did not address this issue in his brief in opposition.

"The Supreme Court has long recognized that 'there is room for play in the joints' between the First Amendment's two clauses concerning religion: 'the government may . . . accommodate religious practices . . . without violating the Establishment Clause,' but '[a]t some point, accommodation may devolve into an 'unlawful fostering of religion.'" *Young v. Beard*, 248 F. App'x 958, 963 (3d Cir. 2008) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 713-714 (2005)). At the summary judgment stage, the question of whether the accommodations have devolved into an unlawful fostering of religion in this case, must be decided based on the undisputed facts set forth in the parties' statements of facts, when applied to the law. Defendants' brief in this case provides no clear analysis of what facts (from the statement of facts) they rely on in support of the position that they are entitled to summary judgment as to this claim, or whether those facts are in dispute. Absent this information in the briefs, I am compelled to deny summary judgment as to the Establishment Clause claim.

V.      CONCLUSION

Accordingly, I conclude that:

(1)     Because Plaintiff is no longer in DOC custody, all requests for injunctive or declaratory relief are DISMISSED as MOOT.

(2)     For the same reasons, Plaintiff's RLUIPA and RFPA claims are DISMISSED as MOOT.

(3)     Plaintiff's Motion for Partial Summary Judgment (Doc. 219) is DENIED.

(4)     Defendants' Motion for Summary Judgment (Doc. 213) is GRANTED in part and DENIED in part as follows:

     (a)     Defendants are entitled to qualified immunity as to Plaintiff's First Amendment Free Exercise & Equal Protection Clause claims relating to wearing an NOI Fez and conducting inmate-led fundraisers.

     (b)     Defendants' Motion is DENIED in all other respects.

(5)     An appropriate Order will be issued.

Date: March 23, 2022                    BY THE COURT

                                 *s/William I. Arbuckle*
                                 William I. Arbuckle
                                 U.S. Magistrate Judge